**Vanessa TAYLOR, on behalf of herself and all other persons similarly situated, Appellants,**

v.

**CONSOLIDATED EDISON CO. OF NEW YORK, INC., et al., Appellees.**

**No. 464, Docket 76–7374.**

United States Court of Appeals, Second Circuit.

Argued Jan. 10, 1977.

Decided Feb. 24, 1977.

---

David Goldfarb, The Legal Aid Society, Staten Island, N.Y. (Joan Mangones, Atty., Marshall Green, The Legal Aid Society, Staten Island Neighborhood Office, Staten Island, N.Y., John E. Kirklin, Director of Litigation, Kalman Finkel, The Legal Aid Society, Civil Appeals & Law Reform Unit, New York City, of counsel), for appellants.

Bernard Hulkower, New York City (Walter A. Morris, Jr., Gen. Counsel, Jonathan R. Sheiner, Thomas J. Farrelly, Consol. Edison Co. of New York, Inc., New York City, of counsel), for appellees Consolidated Edison Co. of New York, Inc., Charles F. Luce, Arthur Hauspurg.

Charles R. Gibson, Albany, N.Y. (Peter H. Schiff, Counsel to the Public Service Commission of the State of New York, Albany, N.Y., of counsel), for Public Service Commission of the State of New York, its Members and Agents.

\* Of the United States District Court for the Southern District of New York, sitting by designation.

Before MANSFIELD, VAN GRAAFEILAND, Circuit Judges, and OWEN, District Judge.\*

MANSFIELD, Circuit Judge.

Appellant's electrical service was terminated by Consolidated Edison Co. ("Con Ed") without a hearing because she allegedly had tampered with her meter and refused to pay amounts estimated by Con Ed to be owing or to leave a deposit with it to secure future payment. She brought suit in the Eastern District of New York under 42 U.S.C. § 1983, claiming a deprivation of property without due process and in violation of the Equal Protection Clause. The late Judge Walter Bruchhausen dismissed her complaint for lack of jurisdiction on the ground that she had failed adequately to allege state action. Because we find this case indistinguishable in any significant legal respect from *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), we affirm.

Appellant became a customer of record of Con Ed on December 16, 1975. In the following two months her meter showed no consumption of electricity and she was billed at Con Ed's minimum rate.[1] On March 11, 1976, Con Ed discovered evidence that the meters for both apartments on the premises had been tampered with. The meter for the upstairs apartment, apparently the residence of appellant's father, was disconnected by Con Ed because there was no customer of record for that meter. The company's employee left notice at appellant's apartment stating that there was evidence of meter tampering and asking that she contact Con Ed immediately. Appellant did not do so, and on the following day Con Ed's employees entered the premises and disconnected appellant's service.

On Saturday, March 13, Con Ed's Emergency Service Division re-established ser-

1. The previous tenant in the same apartment had used electricity in amounts between $12.23 and $30.62 per month, and at her prior address appellant's electrical bills had ranged from $21.31 to $45.61.

vice to appellant's apartment in apparent ignorance of the termination. This error was discovered on Monday, March 15, and service was again discontinued. Service was re-established on March 23 pending resolution of this dispute, pursuant to a request of a member of the New York Public Service Commission staff.

## DISCUSSION

■■ Appellant's principal contention is that in holding her responsible for the tampering, in billing her $100 for electricity consumed while the meter was inoperable, and in requiring a $100 deposit before permitting resumed service, all without a hearing, Con Ed deprived her of property without due process of law. Since the Due Process Clause is directed solely against action on the part of a state, however, these facts would state a claim under 42 U.S.C. § 1983 (over which we might entertain jurisdiction pursuant to 28 U.S.C. § 1343) only if appellant could allege and show that the denial of a hearing was attributable to action or involvement on the part of the State of New York, as distinguished from private action on the part of Con Ed.

As the Supreme Court noted in *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974), the answer depends on "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." There the plaintiff, a customer of Metropolitan Edison Co., a utility regulated by the State of Pennsylvania, similarly brought suit under § 1983, alleging that it had terminated her electric service without prior notice or an opportunity to be heard and claiming that this amounted to a deprivation of property without due process. Despite extensive state regulation of Metropolitan, its status as virtually the sole supplier of electricity in the area involved, the public interest in the function it performed, and the acceptance without disapproval by the Public Utility Commission of Metropolitan's tariff asserting its right to terminate

for non-payment without hearing, the Supreme Court held that the state was not sufficiently involved to render the termination of service state action for due process purposes.

In support of her contention that a closer nexus exists between the state and the challenged action here than in *Jackson*, appellant points to three factors: (1) that the State of New York aided in the termination of appellant's service by authorizing Con Ed to enter the premises to effectuate it, in derogation of the state's common law; (2) that the State of New York is more deeply involved in the regulation of termination procedures than was the Pennsylvania Public Utility Commission in *Jackson*; and (3) that the New York Public Service Commission became directly involved in this termination. The question, therefore, is whether these factors, if provable, render the nexus "sufficiently close" to distinguish this case from *Jackson*. We think not.

■ In order to evaluate the additional factors claimed by appellant to distinguish this case from *Jackson*, an understanding of the function of the state action requirement is essential. That requirement defines the point at which constitutional obligations must be imposed. We have recognized that this point and the type of state involvement that will suffice to reach it may vary according to the nature of the constitutional right allegedly violated and the relationship between the state's involvement and the conduct claimed to violate that right. Because of the generally recognized anathematic status of any government-sponsored racial discrimination, for instance, we have held that a lesser degree of state involvement is needed to meet the state action requirement in cases alleging such discrimination, *Jackson v. Statler Foundation*, 496 F.2d 623 (2d Cir. 1974), than in those claiming denial of due process, *Coleman v. Wagner College*, 429 F.2d 1120 (2d Cir. 1970), or infringement of First Amendment rights, *Powe v. Miles*, 407 F.2d 73, 82–83 (2d Cir. 1968); *Wahba v. New York University*, 492 F.2d 96 (2d Cir.), *cert. denied*, 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974); *Grafton*

*v. Brooklyn Law School,* 478 F.2d 1137 (2d Cir. 1973). Similarly, because the Equal Protection Clause recognizes "the peculiar offensiveness of the state's taxing all citizens for objectives from the benefits of which a particular category is arbitrarily excluded or disadvantaged," *Powe v. Miles,* 407 F.2d at 82, we have found that a challenge to the allocation of a state's tax revenues on sex discrimination grounds may be subject to a lighter state action burden. *Weise v. Syracuse University,* 522 F.2d 397, 405 (2d Cir. 1975).

■■ The relationship of the state's involvement to the conduct forming the basis of the constitutional claim is likewise of prime importance. Where the "private" party is engaged in the alleged deprivation at the state's express direction, the actor may well be subjected to constitutional limitations. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 357, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). Similarly, where the state would ordinarily be responsible for maintenance of facilities normally used for the exercise of a constitutional right, such as streets, meeting halls or institutions that are the traditional sites of free expression, those in charge of the facilities will be deemed to act as arms of the state. *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946).

■■ When it comes to the enforcement of due process rights the state action requirement, of course, serves the function of protecting all persons against arbitrary or unreasonable action directly sponsored by the state. Accordingly, the requirement is obviously satisfied when the conduct amounting to a denial of due process is expressly ordered by the state. In addition, due process rights attach when the actor acts arbitrarily in the performance of a recognized state function, such as the service of process, see *United States v. Wiseman,* 445 F.2d 792 (2d Cir. 1971), or deprives a person of property or liberty without notice or hearing pursuant to a state law which substantially modifies private common law rights. See, e. g., *Hernandez v. European Auto Collision, Inc.,* 487 F.2d 378 (2d Cir. 1973) (holding that a state-authorized private sale of an automobile in satisfaction of a mechanics lien, which was not permitted at common law, to be state action), and *Shirley v. State National Bank,* 493 F.2d 739 (2d Cir. 1974) (upholding state peaceful repossession statute, in part on ground that such right existed at common law).

Armed with these general guidelines, we turn to the first of the three factors claimed by appellant to push this case across the state-action line, that the state authorized a special right of entry to disconnect for meter tampering. The existence of such statutory authority is doubtful. N.Y. Transportation Corporations Law § 15 authorizes such termination only for non-payment and does not refer to disconnection for tampering. Con Ed, furthermore, points out that it did not enter her premises pursuant to any statutory grant of authority but by virtue of the authority contained in its tariff, which constitutes part of its contract with appellant for supply of electricity.

■ Whatever may be the merits of appellant's claim that Con Ed acted pursuant to a state-authorized special right of entry, including the assertion that the statutory authority was in derogation of common law,[2] appellant's argument misconceives the relevance of statutory changes in the common law to the issue of state action. Such changes are relevant to state action in the due process context only where the thrust of the complaint is that the state has authorized a non-consensual deprivation of property or liberty which does not conform to traditional notions of fundamental fairness as embodied in procedural requirements of common or constitutional law. Even then,

---

2. Under New York common law, appellant apparently would have a common law action for trespass only if Con Ed were mistaken in its belief that she was at fault. *Goblet v. New York Power and Light Corp.,* 267 App.Div. 1030, 48 N.Y.S.2d 107 (3d Dept. 1944); *Dobbs v. Northern Union Gas Co.,* 78 Misc. 136, 137 N.Y.S. 785 (1st Dept. 1912).

not every statutory change in the common law will rise to the level of a violation of such traditional notions of fundamental fairness. To make such an argument here, appellant would have to establish that there existed at common law a right to a hearing prior to termination of utility service, which right the legislature has statutorily abolished. Appellant does not, and indeed cannot, make such an argument. We therefore find that the use of a right of entry to effectuate the termination would not distinguish this case from *Jackson*.[3]

Appellant next attempts to distinguish *Jackson* by pointing to the extensive regulation of utility terminations by New York State. In *Jackson* the only relevant regulation was a tariff filed by the utility. The Court even questioned whether the Pennsylvania Public Utility Commission had the power to regulate in the area. 419 U.S. at 355 & n. 14, 95 S.Ct. 449. Here, by contrast, Transportation Corporations Law § 15 requires notice prior to termination for nonpayment of bills,[4] as does 16 N.Y.C.R.R. § 143.1.[5] Public Service Law § 66(5) grants the Public Service Commission the power to investigate customer complaints and to order a cessation of unjust, unreasonable, or discriminatory acts.[6] Utility regulations issued pursuant to this authority require that complaints be investigated at least informally by the Commission staff[7] and, if circumstances warrant, that a hearing may be

---

3. A contrary holding would lead to anomalous results. Under such a holding, if the utility cut off service at a pole out on the street, no pretermination hearing would be required, but if it entered upon the property, such a hearing would be necessary. The Constitution must be construed so as to effectuate the evident purposes of its provisions; appellant has failed to point to any constitutional purpose that would warrant the distinction she urges here.

4. N.Y. Transp. Corp. Law § 15 provides in relevant part:
   "But the supply of gas or electric light shall not be discontinued for non-payment of bills rendered for service until and after a five-day written notice has been served upon such person either by delivering the same to such person personally or by mailing the same in post-paid wrapper addressed to such person at premises where service is rendered."

5. 16 N.Y.C.R.R. § 143.1(a) provides:
   "No electric corporation shall discontinue the supply of electricity for nonpayment of bills rendered for service or for failure to post a required deposit until: (1) at least five days after written notice has been served personally upon the person supplied, (2) at least eight days after mailing written notice in post-paid wrapper to the person supplied, addressed to such person at premises where service is rendered, or (3) at least five days after the person supplied has either signed for or refused a registered letter containing written notice, addressed to such person at premises where service is rendered."

6. N.Y. Pub. Serv. Law § 66(5) provides in relevant part:
   "The commission shall: . . . . 5. Examine all persons, corporations and municipalities under its supervision and keep informed as to the methods, practices, regulations and property employed by them in the transaction of their business. Whenever the commission shall be of opinion, after a hearing had upon its own motion or upon complaint, that . . . the acts or regulations of any such . . . corporation . . . are unjust, unreasonable, unjustly discriminatory or unduly preferential . . ., the commission shall determine and prescribe . . . the just and reasonable acts and regulations to be done and observed . . . ."

7. 16 N.Y.C.R.R. § 11.2(a) & (b) provide in relevant part:
   "(a) When a complaint is filed, it will be investigated by the commission, through its staff . . . . .
   "(b) . . . [T]he designated officers or employees may obtain the information required to make the necessary determination by conversation with the complainant or his or her representative by telephone or in person, supplemented where appropriate by written materials from the complainant, reports or documents from the utility (including such data as may be required by the staff at the request of the complainant or on its own initiative); through written complaints similarly supplemented; or through a conference conducted by the designated officer or employee at which the complainant, accompanied and assisted by such friend, adviser or attorney as he or she desires, and company representatives are present. *Officers or employees designated to consider complaints will afford both the complainant and the utility a fair and reasonable opportunity to present evidence pertinent to the complaint and to challenge evidence submitted by the other party to the dispute.*" (Emphasis supplied).

held to resolve evidentiary issues.[8] They further provide that the Commission may (and "will in the absence of unusual circumstances") prohibit discontinuance of service while the Commission's investigation is pending.[9] They also require the utility itself to conduct an investigation prior to the termination.[10] Moreover, the tariff used by Con Ed as the basis for terminating appellant's service was approved by Commission order.[11] It is clear, therefore, that New York has intervened extensively in the termination area, as was not the case in *Jackson*.

State regulation of utility termination, however, is not synonymous with state responsibility for the lack of a pretermination hearing. The existence of state action does not depend upon New York's regulation of termination or its approval by order of Con Ed's tariff but upon whether it has involved

itself in the decision not to grant a hearing. Despite all of New York's regulations, it is clear that the decision not to grant a hearing is and always has been Con Ed's. If Con Ed were to decide to provide hearings, there is no evidence that the state would object. Neither by approving the present tariff nor by regulation has the state ever ordered Con Ed not to conduct pretermination hearings or given it any kind of incentive to deny such hearings. All that New York has done is to require that certain procedural protections be accorded customers prior to termination. Although these procedures do not include that sought by appellant, "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Katzenbach v. Morgan*, 384 U.S. 641, 657, 86 S.Ct. 1717, 1727, 16 L.Ed.2d 828 (1966); *Williamson v. Lee Opti-*

---

8. 16 N.Y.C.R.R. § 11.2(c) provides in part: "After receipt of the answer to a complaint, and where the procedures described in section 11.2(b) are not applicable or cannot reasonably resolve the issues raised by a complaint, the commission, on its own initiative, the recommendation of staff, or the request of the complainant or the utility, may call a public hearing . . . ."

9. 16 N.Y.C.R.R. § 11.2(d) provides: "Pending resolution of complaints, the commission may require appropriate interim relief. In the case of complaints regarding bills or deposits, the commission, without hearing or formal order, may, and in the absence of unusual circumstances, will preclude discontinuance of service or the issuance of any notice of discontinuance during the commission's investigation of such complaint, upon such terms and conditions as it deems appropriate." The comment to 16 N.Y.C.R.R. § 11.2(d) reads: "In implementing this provision, the commission, for example may require a customer, as a condition for avoiding a cutoff of service for nonpayment of a bill, to pay the undisputed portion of such a bill or, in appropriate circumstances, to pay such amounts as reasonably appear to reflect the cost of current usage."

10. 16 N.Y.C.R.R. § 143.8(a) provides: "Every electric corporation shall establish procedures whereby any complaint filed with such corporation by any customer thereof in regard to any bill for service rendered or any deposit required will be promptly investigat-

ed in an appropriate and fair manner, with the results of such investigation being promptly reported to the complaining customer. Such procedures shall allow the acceptance and processing of complaints submitted in simple manner and form. Regardless of whether a notice of discontinuance has previously been sent, *the utility's procedures shall provide that pending the utility's investigation it shall not discontinue service or issue a notice of discontinuance*; provided, however, the consumer may be required to pay the undisputed portion of a disputed bill or deposit to prevent discontinuance or the issuance of a notice of discontinuance." (Emphasis supplied.)

11. P.S.C. No. 8, General Information III, 15 provides in relevant part: "[T]he Company reserves the right to withhold service or to discontinue service or terminate any agreement therefore, [sic] in such manner as may be permitted by law under the circumstances: . . . (b) if the Customer refuses or fails to comply with any applicable provision, rule, regulation, term or condition of this Rate Schedule, or with any applicable law or order of the Public Service Commission or other authorities having jurisdiction, or if the Customer's installation or part thereof is deemed by the Company to be unsafe, inadequate or unsuitable for receiving the Company's service, or to interfere with or impair the continuity or quality of the Company's service to the Customer or to others . . . ."

*cal Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

Nor is appellant's position improved by the fact that the Commission acted pursuant to its regulations, investigating appellant's complaint and requesting that service be continued pending resolution of the dispute. By doing so the Commission in no way ordered Con Ed to forego pretermination hearings. Nor has the Commission, without allowing appellant to be heard, itself decided that her service must be discontinued. All that the Commission has done is to exercise its supervisory powers in appellant's favor, investigating the circumstances of the termination and requiring that appellant not be deprived of service pending judicial disposition of her claims.

■ Finally, we must consider whether, even if no one of the factors appellant has singled out alone distinguishes the case from *Jackson*, the state's total involvement in the matter generally renders the nexus "sufficiently close." The only possible argument appellant could make here is that use of the possible statutory grant of a special right of entry, the partial regulation of termination procedures, and the Commission's intervention make Con Ed an arm of the state and therefore subject it to the requirements of the due process clause. We think not. The following statement of the Supreme Court in *Jackson*, 419 U.S. at 358, 95 S.Ct. at 457, appears to govern:

> "All of [appellant's] arguments taken together show no more than that [Consolidated Edison] was a heavily regulated, privately owned utility, enjoying at least a partial monopoly in the providing of electrical service within its territory, and that it elected to terminate service to petitioner in a manner which the [New York Public Service Commission] found permissible under state law."

Under the circumstances, we must therefore hold that any denial of a hearing was not the result of state action.

■ Appellant's equal protection claim is simply that by requiring pretermination notice to customers who have not paid their bills but not to customers who are alleged to have tampered with their meters, see Transportation Corporations Law § 15, the state has deprived the latter of the equal protection of the laws. On examination, appellant's argument that there is no rational basis for such a distinction does not hold water. In amending § 15 to eliminate notice to alleged tamperers, the New York Legislature noted that the requirement of a five-day notice period to tamperers would in effect afford a period of grace to persons believed to be committing a misdemeanor and permit the continued existence of possibly dangerous conditions during that period.[12] We think that these factors constitute a rational basis for the distinction and therefore hold that the state has not denied appellant equal protection.

We therefore affirm the order of the district court.

---

12. See Memorandum of Senator Burchill, Governor's Bill Jacket, Laws 1937, ch. 545.