**IOWA CITIZEN/LABOR ENERGY COALITION, INC., Appellant,**

v.

**IOWA STATE COMMERCE COMMISSION, Appellee.**

No. 68804.

Supreme Court of Iowa.

June 15, 1983.

Rehearing Denied July 14, 1983.

Roger D. Colton, Des Moines, Legal Services Corp. of Iowa, for appellant.

James R. Maret, Commerce Counsel and Alice J. Hyde, Asst. Commerce Counsel, Des Moines, for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, LARSON and CARTER, JJ.

McCORMICK, Justice.

This appeal involves judicial review challenges to rules adopted by respondent Iowa State Commerce Commission governing disconnection of gas and electric utility service. The rulemaking proceeding was initiated in response to a petition filed by petitioner Iowa Citizen/Labor Energy Coalition, Inc. (ICLEC). Petitioner contends the commission made two procedural errors and two errors of substance in formulating the rules. The district court affirmed the commission, and we affirm the district court.

One procedural question concerns the adequacy of the commission's notice of its intended rulemaking. The other concerns the sufficiency of the commission's consideration of relevant factors. The questions relating to the substance of the rules involve due process attacks on the adequacy of notice prior to disconnections that are postponed because of low temperatures and the adequacy of notice to tenants of impending shutoffs caused by landlord payment defaults. We treat the due process questions together.

I. *Notice of intended action.* ICLEC petitioned the commission for revision of its rules governing utility disconnections in cold weather pursuant to Iowa Code section

17A.7 (1981) ("An interested person may petition an agency requesting the promulgation, amendment or repeal of a rule."). The commission decided to initiate rulemaking proceedings. In accordance with section 17A.4, it gave notice of its intended action. After one public hearing, the commission enlarged the scope of the proceeding and gave a new notice of intended action. The rules challenged here were adopted after the second hearing. ICLEC contends the notices were deficient under section 17A.4(1)(a).

Section 17A.4(1)(a) provides in part:

Prior to the adoption, amendment, or repeal of any rule an agency shall: a. Give notice of its intended action.... The notice shall include a statement of either the terms or substance of the intended action or a description of the subjects and issues involved, and the time when, the place where, and the manner in which interested persons may present their views thereon.

In its first notice, the commission said it intended to consider proposed rule changes concerning procedures for reconnecting gas and electric service "when temperatures are forecast to go below 20° Fahrenheit, and the establishment of guidelines for utility use of Service Limiter Adapters." In its second notice, the commission said it had revised the proposed rule changes by substituting an "ability to pay standard" for the temperature standard. Several pages of specific proposed rule amendments were attached to the notice.

ICLEC asserts the notices were narrowly circumscribed while the resulting rule changes were broad. Moreover, it argues the second notice did not broaden the scope of the first because none of the proposed rules accompanying the second notice were adopted. ICLEC identifies three provisions of the rule changes finally adopted by the commission that it contends exceeded the scope of the notices. The changes provide protection against disconnections for customers who enter payment plans, a procedure for challenging payment plans, and a time limit on applications for energy assist-

ance. The commission argues that the changes were within the nature and scope of the proceedings covered by the two notices. We agree with the commission that both notices are important in resolving the issue of adequacy of notice.

The rulemaking process was initiated in response to a request by ICLEC for rule changes to provide for reconnection of disconnected utility services during low temperature periods. Comments in the first hearing persuaded the commission to shift its focus from a temperature standard for shutoff procedures to an ability to pay standard. The proposed rule changes accompanying the second notice reflected this shift in focus. The changes adopted after the second hearing incorporated features of both standards.

The three rule changes the ICLEC contends exceeded the scope of the notice are examples of the accommodation between the two approaches. Customers in financial difficulty can enter payment agreements and avoid disconnections altogether. This provision implements the ability to pay standard. Customers who default on payment agreements or regular bills are still protected by a temperature standard. If a dispute arises between the customer and utility about the reasonableness of a payment plan, the customer has ten days to complain to the commission. This provision implements the ability to pay standard by providing recourse to customers otherwise at the mercy of a utility's superior bargaining position. The second notice included a proposed rule protecting against disconnection while the customer applied for energy assistance. The final version of this rule merely added a time limit during which the customer must make the application for energy assistance.

■ We have not previously interpreted section 17A.4(1)(a). It is similar, however, to the rulemaking notice provisions in the federal administrative procedure act. *See* 5 U.S.C. § 553(b)(3) (1976). We find federal decisions are persuasive in interpreting our statute. Under those decisions, the adequacy of notice is decided on a functional basis.

A notice must be sufficiently informative to assure interested persons an opportunity to participate intelligently in the rulemaking process. An agency has a duty to submit rules to additional comment only when the prior notice does not meet that standard. *See Wagner Electric Corp. v. Volpe,* 466 F.2d 1013, 1019–20 (3d Cir.1972); Bonfield, *The Iowa Administrative Procedure Act: Background, Construction, Applicability, Public Access to Agency Law, The Rulemaking Process,* 60 Iowa L.Rev. 731, 851 (1975).

■ An additional hearing is not required, however, merely because final rules differ from proposed rules:

The procedural rules were meant to ensure meaningful public participation in agency proceedings, not to be a straitjacket for agencies. An agency's promulgation of proposed rules is not a guarantee that those rules will be changed only in the ways the targets of the rules suggest. "The requirement of submission of a proposed rule for comment does not automatically generate a new opportunity for comment merely because the rule promulgated by the agency differs from the rule it proposed, partly at least in response to submissions." [citations omitted] Even substantial changes in the original plan may be made so long as they are "in character with the original scheme" and "a logical outgrowth" of the notice and comment already given. [citation omitted]

The essential inquiry is whether the commenters have had a fair opportunity to present their views on the contents of the final plan.

*BASF Wyandotte Corp. v. Costle,* 598 F.2d 637, 642 (1st Cir.1979), *cert. denied,* 444 U.S. 1096, 100 S.Ct. 1063, 62 L.Ed.2d 784 (1980).

■ In the present case, the rule changes that were adopted by the commission were in character with the proposals covered by the two notices, and they were a logical outgrowth of the prior notices and public hearings. The commission did not violate section 17A.4(1)(a) by failing to give an additional notice and provide a new opportunity for comment.

II. *Consideration of relevant factors.* ICLEC accuses the commission of violating a requirement of section 17A.4(1)(b) that the "agency shall consider fully all written and oral submissions respecting the proposed rule." In its order adopting the rule changes, the commission summarized the rulemaking proceeding and outlined the reasoning process through which it reached its decision. It did not, however, expressly respond to every argument presented in the public hearings. ICLEC contends this constitutes a violation of the statute and shows the commission decision was arbitrary, capricious and an abuse of discretion. *See* § 17A.19(8).

■ The problem with ICLEC's contention is that it equates a failure to address specific arguments in the decision with a failure to consider them. This focus is too narrow. In determining whether an agency violated its duty to consider all relevant factors in arriving at its decision, the entire record before the agency must be examined. *See National Pork Producers Council v. Bergland,* 631 F.2d 1353, 1359 (8th Cir.1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1350, 67 L.Ed.2d 335 (1981).

■ The fact that the commission did not recite ICLEC's arguments does not prove it failed to consider them. ICLEC alleges, for example, that the commission did not consider evidence that the existing temperature standard was inadequate to protect persons from hypothermia. The record shows, however, the issue of health hazards was fully explored in the commission hearing and decision. Health hazards were identified as an issue in the commission's summary of proceedings: "Members of the public indicated people on fixed incomes have had difficulty meeting the increased cost of utility services and must sometimes choose between 'freezing or starving.' Disconnection for failing to make a payment during cold weather is inhumane, they argue." The final rules include protections against health hazards, although not of the nature or scope advocated by ICLEC.

Elaborate notice and payment agreement procedures, as well as the temperature standard, are calculated to protect consumers against hardship, and the commission fully explained its reasons for limiting the protections in the way it did. Evidence cited by ICLEC that would have supported a different result is substantial, but this is insufficient to demonstrate that the evidence was ignored.

We find that the record as a whole demonstrates that the commission gave full and fair consideration to all of the evidence. ICLEC has not established that the commission violated section 17A.4(1)(b) by failing to consider fully all written and oral submissions nor has it shown that the decision was arbitrary, capricious or an abuse of discretion.

III. *The due process questions.* ICLEC contends the rule changes violate the due process protections of Iowa Const. Art. I, section 9, and U.S.Const. amends. 5 and 14, in two respects. It cites an alleged deficiency in the notice required prior to disconnection when it is triggered by a temperature rise after having been postponed because the temperature was below the shutoff standard when cause for disconnection arose. The other alleged deficiency concerns the adequacy of notice to tenants of an impending shutoff due to a landlord's failure to pay the utility bill.

The due process protections are not applicable if the disconnection procedures are not state action. The test for determining whether the action of a private utility in discontinuing utility services is state action was established by the Supreme Court in *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 350–51, 95 S.Ct. 449, 453–54, 42 L.Ed.2d 477, 483–84 (1974):

> Here the action complained of was taken by a utility company which is privately owned and operated, but which in many particulars of its business is subject to extensive state regulation. The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment. [citation

omitted] Nor does the fact that the regulation is extensive and detailed, as in the case of most public utilities, do so. [citation omitted] It may well be that the acts of a heavily regulated utility with at least something of a governmentally protected monopoly will more readily be found to be "state" acts than will the acts of an entity lacking these characteristics. But the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself. [citation omitted] The true nature of the State's involvement may not be immediately obvious, and detailed inquiry may be required in order to determine whether the test is met. [citation omitted].

The Court held that the utility did not engage in state action by permitting utility disconnections even though the utility was extensively regulated, had monopoly status and provided an essential public service. Approval of utility shutoff practices "where the commission has not put its own weight on the side of the proposed practice by ordering it, does not transmute a practice initiated by the utility and approved by the commission into 'state action.' " *Id.* at 357, 95 S.Ct. at 456–57, 42 L.Ed.2d at 487. Other courts have reached the same conclusion in similar cases. *See Taylor v. Consolidated Edison Co. of New York,* 552 F.2d 39 (2d Cir.), *cert. denied,* 434 U.S. 845, 98 S.Ct. 147, 54 L.Ed.2d 111 (1977); *Srack v. Northern Natural Gas Co.,* 391 F.Supp. 155 (S.D.Iowa 1975).

■ ICLEC seeks to distinguish this case from the *Jackson* line of cases by noting this case involves a challenge to the rules rather than to specific action taken under them. The issue, however, is the same. It is whether the state by adopting rules permitting such specific action has made the action that of the state. ICLEC also notes the rules initially adopted contained language purporting to require a utility to disconnect services in certain circumstances. The commission amended the rules, how-

ever, to make termination permissive. In doing so, the commission explained its purpose was merely to establish reasonable procedures to be followed by utilities that elect to terminate services to customers who fail to pay their bills.

The State has thus not thrown its weight behind the practice "by ordering it." If rule limitations did not exist, state action plainly would not be present in a utility decision to terminate service for nonpayment. Rules limiting a right that would otherwise exist do not make exercise of the right state action. Nor does the state's encouragement of collection of delinquent bills convert the limitations to state action. Disconnections remain merely a permissive device for utilities to use in attempting to achieve that objective. Commission policy favoring collection of delinquent accounts has resulted in enlargement of the scope of permission to discontinue services, but it has not made disconnection for nonpayment mandatory.

Because we find state action is not present, we reject ICLEC's due process challenge. We reach the same conclusion under the federal and state constitutions, and we have no occasion to consider other issues involved in the constitutional challenge.

AFFIRMED.