John PAVOLINI, Plaintiff-Appellant,

v.

BARD–AIR CORP. and The Barden Robeson Corporation, Defendants-Appellees.

No. 703, Docket 80–9017.

United States Court of Appeals, Second Circuit.

Argued Feb. 2, 1981.

Decided March 26, 1981.

Ronald R. Benjamin, Binghamton, N.Y., for plaintiff-appellant.

Edmund J. Hoffmann, Jr., Cortland, N.Y., for defendants-appellees.

Before FEINBERG, Chief Judge, NEWMAN, Circuit Judge, and MISHLER, District Judge.*

FEINBERG, Chief Judge:

John Pavolini, a licensed air transport pilot, appeals from an order of the United States District Court for the Northern District of New York, Neal P. McCurn, J., which dismissed his complaint against defendants Bard-Air Corp. and the Barden Robeson Corporation (collectively referred to as "Bard-Air"). Bard-Air is a small charter air carrier certified by the Federal Aviation Administration ("FAA") to transport persons and property for hire over certain designated air routes. Plaintiff Pavolini, a former employee of Bard-Air, sought some $43 million in compensatory and punitive damages from defendants. The crux of the complaint was that Pavolini had been unlawfully discharged for reporting to the FAA Bard-Air's violations of that agency's air safety regulations promulgated under the Federal Aviation Act of 1958. The main issue on appeal is whether the district court correctly concluded that there is no implied cause of action under that Act

---

* Honorable Jacob Mishler, Senior Judge of the United States District Court for the Eastern District of New York, sitting by designation.

for wrongful discharge. We agree with the conclusion of the district court, and we affirm the judgment dismissing the complaint.

## I

According to the record before us, the relevant facts are as follows:[1] Pavolini, who has held an air transport pilot's license for 18 years, began working for Bard-Air as a pilot in June 1978 on a part time basis; one year later, his employment became full time. During June 1979, Pavolini discovered that the aircraft he and four other Bard-Air pilots were assigned to fly were unsafe and did not comply with FAA safety regulations. That same month, Pavolini reported the violations to James Knight, who was Bard-Air's chief pilot and also its Director of Operations and Vice-President. Knight took no action to correct the safety violations and permitted them to continue.

Following Knight's orders, Pavolini piloted air taxi flights on August 14, 20 and 23, 1979, which caused him to exceed flight and/or duty time limitations set by the FAA. Knight also ordered Pavolini to falsify flight records to reflect that the August 14 flight was within the FAA duty time limitations.[2] Pavolini refused to falsify the record and reported this violation to the FAA shortly thereafter. Pavolini requested that the FAA make note of the incident but take no action because he was afraid of losing his job. In late August 1979, a licensed aircraft mechanic informed Pavolini that one of Bard-Air's planes was unsafe and in violation of FAA safety regulations. On the following day, Pavolini reported to the FAA that Bard-Air was flying the unsafe aircraft despite notice of the safety violations. On that same day, the FAA grounded the plane after inspection disclosed numerous safety violations. On September 4, 1979, Knight told Pavolini that what he had done "was the wrong way to go about it," and summarily discharged him.

The FAA's safety investigation of Bard-Air also disclosed that one of Bard-Air's employees had not completed an approved training program or met FAA testing requirements and that Pavolini had exceeded flight and/or duty time limitations on several flights. The Rochester FAA office recommended a civil penalty of not less than $500 against Bard-Air and recommended no action against Pavolini for exceeding duty and/or flight time limitations. The FAA's report noted that Pavolini was fired for bringing matters to the attention of the FAA and was experiencing considerable difficulty in obtaining employment as a pilot because of his action.

Pavolini sought to recover damages for loss of wages, mental distress and anguish, as well as punitive damages, resulting from his discharge, alleging that it violated the Federal Aviation Act of 1958, 49 U.S.C. § 1301 et seq., the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.,[3] the First and Fourteenth Amendments to the United States Constitution, and state law. Bard-Air moved to dismiss the complaint, and Judge McCurn granted that motion in October 1980 in a brief, unreported order. The district court found that there is no implied cause of action under the Federal Aviation Act for wrongful discharge, that the defendant was not acting as an arm of the government and that the court did not have pendent jurisdiction over any state claim. This appeal followed.

## II

In this court, Pavolini first argues that an implied cause of action exists under

---

1. The district court granted a motion to dismiss the complaint, which incorporated two exhibits. For purposes of this appeal, therefore, the factual allegations in the complaint are assumed to be true.

2. Knowing and willful falsification of records is a misdemeanor under the Act, carrying a fine of not more than $5,000, 49 U.S.C. § 1472(e).

3. Any claim under the Occupational Health and Safety Act has apparently been dropped on appeal. In any event, our reasoning in this opinion would apply also to a claim under that Act.

the Federal Aviation Act in favor of a pilot discharged for reporting violations of safety provisions to the FAA. In pressing this claim, Pavolini offers a detailed analysis of the famous four factors set forth in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).[4] However, lengthy discussion of the *Cort* guidelines is not required here, because our first inquiry must be whether the injury complained of resulted from "disregard of the command of the statute." *Texas & Pacific Ry. Co. v. Rigsby*, 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1915). There must be a duty, the violation of which has caused injury, before we reach the question whether a private remedy exists to redress that injury, *Rauch v. United Instruments, Inc.*, 548 F.2d 452, 457 (3d Cir. 1976). Pavolini's claimed injuries were allegedly caused by his discharge, but the Act does not require an air carrier to continue to employ an employee for any reason, nor does the Act prohibit a carrier from discharging an employee for reporting safety violations to the FAA.

It is true that the statute commands the Administrator of the FAA "to promote safety of flight of civil aircraft in air commerce by prescribing" and enforcing standards, rules and regulations, including those governing "inspection, servicing and overhaul of aircraft" and the "maximum hours of periods of service of airmen" and "in such manner as will best tend to reduce or eliminate the possibility of, or recurrence of, accidents in air transportation. . . ." 49 U.S.C. §§ 1421(a)(3), (a)(5) and (b). Similarly, an air carrier is required, under pain of civil and criminal penalties,[5] to comply with such regulations and "to perform . . . services with the highest possible degree of safety in the public interest. . . ." 49 U.S.C. § 1421(b). And we can assume on this record that Bard-Air has violated the Act in several respects.[6] But nevertheless, this is an action seeking redress for loss of employment and Pavolini's injury does not flow, in a legal sense, from Bard-Air's failure to obey any statutory requirement or from a violation of any statutory prohibition. Under the circumstances, it is not necessary to consider further the issue of implying a right of action.

■ Pavolini also argues that his termination for reporting the violations deprived him of his constitutional right to freedom of speech under the First and the Fourteenth Amendments. However, before Pavolini can recover for alleged violations of the First and the Fourteenth Amendments, he must establish that his discharge by Bard-Air was "state action." Plaintiff relies principally on extensive governmental regulation of the air transport industry to support his claim that Bard-Air was performing a public function. But regulation, without more, is insufficient to treat the discharge by Bard-Air as action by the state; further, we reject the notion that because the FAA may have in some indirect way approved of plaintiff's reporting a safety violation, the discharge was thereby transformed from private conduct to state action. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350–354, 95 S.Ct. 449, 453–455, 42 L.Ed.2d 477 (1974). In the absence of

---

4. These are: (1) whether the plaintiff is "one of the class for whose especial benefit the statute was enacted . . . that is, does the statute create a federal right in favor of the plaintiff," (2) whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one," (3) whether it is "consistent with the underlying purposes of the legislative scheme to imply such a remedy," and (4) whether the cause of action is "one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law." 422 U.S. at 78, 95 S.Ct. at 2087.

5. Penalties include suspension or revocation of aircraft certification, 49 U.S.C. § 1429; civil fines, § 1471(a)(1); and criminal penalties under § 1472, which provides in subsection (a) that "Any person who knowingly and willfully violates any provision . . . shall be deemed guilty of a misdemeanor and upon conviction thereof shall be subject for the first offense to a fine of not more than $500, and for any subsequent offense to a fine of not more than $2,000."

6. Exhibit B attached to the complaint, a memorandum to the Chief, Air Carrier Branch from the Rochester District Office of the FAA, cited violations by Bard-Air.

state action, plaintiff's constitutional claims fail. *Graseck v. Mauceri,* 582 F.2d 203 (2d Cir. 1978).

█ In light of the above, we reluctantly conclude that there is no proper basis for federal jurisdiction here.[7] Since federal courts are courts of limited jurisdiction, Pavolini's remedy, if any, lies in the state courts, which have traditionally exercised jurisdiction over controversies between employers and employees and where Pavolini still has an action pending.[8] We believe that it is unfortunate that a federal court cannot provide recourse to an employee fired for reporting violations of federal safety regulations. We are well aware that Pavolini was in a difficult situation, facing a loss of his job on the one hand and a potential loss of lives on the other; he should be commended for placing public safety over private concerns. We certainly have no desire to encourage retaliation by employers against their employees who, having failed to obtain voluntary compliance, turn to the appropriate federal agency charged with insuring safety in an effort to prevent injury or death. But we are mindful that we do not sit as a legislature. Congress has in the past acted to protect against retaliation federal employees who "blow the whistle" on violators of the law, 5 U.S.C. §§ 2301(b)(9), 2302(b)(8) [9] or those who are performing an important federal function like serving on a jury, 28 U.S.C. § 1875.[10] In view of what has occurred here, Congress may well wish to consider protecting in an appropriate way those who help prevent the loss of life from improper operation or maintenance of aircraft.

The judgment of the district court is affirmed.

---

7. There is no claim of diversity of citizenship.

8. Plaintiff is apparently alleging a prima facie tort in the state court action, but points out that he cannot be fully compensated because of the "harsh" common law governing employee-employer relationships and the probability that punitive damages will be precluded in his prima facie tort claim.

9. 5 U.S.C. § 2302 provides in part:

(b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not with respect to such authority—

(8) take or fail to take a personnel action with respect to any employee or applicant for employment as a reprisal for—

(A) a disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—

(i) a violation of any law, rule or regulation, or

(ii) . . . a substantial and specific danger to public health or safety . . . .

10. 28 U.S.C. § 1875 provides in part:

(a) No employer shall discharge, threaten to discharge, intimidate, or coerce any permanent employee by reason of such employee's jury service, or the attendance or scheduled attendance in connection with such service, in any court of the United States.

(b) Any employer who violates the provisions of this section—

(1) shall be liable for damages for any loss of wages or other benefits suffered by an employee by reason of such violation;

(2) may be enjoined from further violations of this section and ordered to provide other appropriate relief, including but not limited to the reinstatement of any employee discharged by reason of his jury service; and

(3) shall be subject to a civil penalty of not more than $1,000 for each violation as to each employee.