518 F.Supp. 246 (1981)
Constant A. MADON, Plaintiff,
v.
LONG ISLAND UNIVERSITY C. W. POST CENTER, Long Island University and Faculty of C. W. Post Center, Long Island University, Greenvale, New York, Defendants.
No. 80 C 2345.
United States District Court, E. D. New York.
July 6, 1981.
Constant A. Madon, East Meadow, N. Y., plaintiff pro se.
Poletti, Freidin, Prashker, Feldman & Gartner, New York City, for defendants by Eric Rosenfeld, Florence Dean, New York City.

MEMORANDUM AND ORDER
NEAHER, District Judge.
Plaintiff pro se in this action brought under the Fourteenth Amendment to the Constitution and 42 U.S.C. § 1983 is a former professor at defendant C.W. Post Center of Long Island University ("LIU").[1] *247 Claiming that he was denied procedural due process when he was dismissed from his position, plaintiff seeks an order reinstating him as a tenured faculty member. The action is now before the Court on defendants' motion to dismiss for failure to state a claim. Rule 12(b)(6), F.R.Civ.P.
On such a motion, the issue is not whether plaintiff will ultimately prevail but whether he is entitled to offer evidence in support of his claims. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Therefore, all well-pleaded material allegations will be accepted as true and the complaint will be construed in favor of the complaining party, Cruz v. Beto, 401 U.S. 319, 323, 92 S.Ct. 1079, 1082, 31 L.Ed.2d 263 (1972), recognizing that there cannot be a dismissal unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claims that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957). Finally, while the Court is cognizant of the liberal reading to be given pro se complaints, Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), we note that plaintiff possesses a doctoral degree, Complaint, Exh. 37, and it is apparent from his own submissions on this motion that he does not suffer from an inability to articulate his view of either the relevant facts or the applicable law. See Morpurgo v. Board of Higher Ed., 423 F.Supp. 704, 707 (S.D.N.Y. 1976) (Weinfeld, J.). Applying the standards outlined above, the Court is of opinion that dismissal is appropriate.
The following facts are gleaned from the complaint and its attached exhibits, and they are presumed true for the purposes of this motion. In 1970 plaintiff began teaching as an associate professor in the Graduate School of Education at the C.W. Post Center of LIU. Three years later he was granted tenure. During the 1972-73 academic year, plaintiff developed two proposals for graduate degree programs he sought to institute within the School of Education. Plaintiff submitted the proposals to the New York State Education Department ("NYSED"), and during the next two years corresponded with NYSED officials with a view towards refining his proposals so as to make them ultimately acceptable for accreditation by NYSED. Plaintiff incorporated some of the officials' suggestions in his programs, which, in 1974, received the final approvals of both LIU and NYSED and were instituted at C.W. Post. Plaintiff and other professors began instructing other faculty members and graduate students who enrolled in the courses necessary for satisfaction of the new degree requirements.
In the Spring of 1976, LIU's Vice President for Academic Affairs initiated an investigation into allegations of unprofessional conduct arising out of the granting of course credits and grades to faculty members enrolled in certain graduate courses at C.W. Post. On December 22, 1976, the President of C.W. Post sent plaintiff a letter containing the following notice:
"On November 11, 1976 the Center Tenure and Promotion Board of C.W. Post Center of Long Island University recommended to me that formal proceedings be instituted to consider your dismissal because it appeared to that Board that you had engaged in unprofessional conduct reflecting upon your fitness as a faculty member.
"Accordingly, and pursuant to the AAUP's [American Association of University Professors] 1940 Statement of Principles on Academic Freedom and Tenure as supplemented by its 1958 Statement of Procedural Standards in Faculty Dismissal Proceedings, it is hereby charged that you awarded credits and grades to other faculty members of C.W. Post Center for courses in the Graduate School of Education not actually taken and completed, and for which appropriate work was not done, as follows: *248 [particularized list of 19 faculty members who received credits and grades from plaintiff]
* * * * * *
"If you so request in writing not less than one week before the hearing date, a hearing to determine whether you should be removed from your faculty position will be conducted by a faculty committee on or after January 26, 1977. At that hearing, you will be accorded the procedural rights set forth in the above mentioned 1940 and 1958 AAUP Statements. On the basis of the hearing the committee will decide whether you should be removed, subject to review and final decision by the Board of Trustees of Long Island University." Complaint, Exh. 12.
Plaintiff requested the hearing and a committee was selected from the LIU faculty. The hearing was held on May 31, 1977, and plaintiff, represented by counsel of his own choosing, appeared and contested the charges. By letter dated June 27, 1977, plaintiff was informed:
"After a thorough hearing and a careful review of the evidence in the record considered as a whole, as presented in the hearings and contained in the transcripts and exhibits, the Hearing Committee has found that the charges made against you have been established by clear and convincing evidence. The Committee recommends that you be dismissed as a member of this faculty." Complaint, Exh. 35.
Plaintiff's attorney filed with the LIU Board of Trustees a brief and presented oral argument contesting the Hearing Committee's recommendation. By letter dated September 7, 1977, however, plaintiff was notified that the Board of Trustees had voted to accept the faculty Committee's recommendation to dismiss him.
Alleging a series of irregularities at the hearing into the charges against him, plaintiff complains that he was deprived of a property interest in his tenured position without procedural due process. Defendants deny any irregularities and have moved to dismiss on the ground that the complaint wholly fails to allege the "state action" necessary for relief under either the Fourteenth Amendment or the Civil Rights Act.[2]
The Supreme Court has squarely placed on plaintiffs in civil rights actions the burden of alleging and proving that the person or entity that caused a deprivation of a federal right acted "under color of state or territorial law."[3]Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). See Monroe v. Pape, 365 U.S. 167, 171, 81 S.Ct. 473, 475, 5 L.Ed.2d 492 (1961). Most recently, the Court of Appeals for this Circuit has stated:
"Generally speaking, there appear to be at least two general approaches that the [Supreme] Court has used to determine whether seemingly private action is in fact state action. One is the state-function approach, in which courts must find that the conduct of the private actor is equivalent to the performing of a state function, or is traditionally associated with sovereignty....
"The other general approach is to examine the conduct of the private actor *249 and ask whether the state and the private actor have a `symbiotic relationship,' [Jackson v. Metropolitan Edison Co., 419 U.S. 345, 357, 95 S.Ct. 449, 456, 42 L.Ed.2d 477 (1974)] making them so significantly involved with one another as to render the private actor subject to the constitutional responsibilities of the state.... A related inquiry asks `whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.' Jackson v. Metropolitan Edison Co., supra, 419 U.S. at 351 [95 S.Ct. at 453] ...." Jensen v. Farrell Lines, Inc., 625 F.2d 379, 384-85 (2d Cir. 1980).
In this regard, mere allegations of State financial or other support, without more, are insufficient to convert an otherwise independent entity into a "joint venturer" with the State. See Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 177, 92 S.Ct. 1965, 1973, 32 L.Ed.2d 627 (1972); Wahba v. New York University, 492 F.2d 96, 100 (2d Cir.), cert. denied, 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974); Grafton v. Brooklyn Law School, 478 F.2d 1137 (2d Cir. 1973).
"Nor will state regulation unrelated to the challenged activity suffice, since `the essential point [is] that the state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the activity that caused the injury.'" Weise v. Syracuse University, 522 F.2d 397, 405 (2d Cir. 1975), quoting, Powe v. Miles, 407 F.2d 73, 81 (2d Cir. 1968). (Emphasis supplied.)
Finally, in cases involving allegations of deprivations other than racial discrimination, the courts have recognized "a more rigorous standard" for the finding of State action. Jackson v. The Statler Foundation, 496 F.2d 623, 629 (2d Cir. 1974).
With these principles in mind, we turn to the allegations of the instant complaint. At the outset, it is clear that plaintiff does not allege that LIU is a part or direct agent of New York State or one of its subdivisions. It is alleged that LIU has received from the State assistance to fund and construct dormitories as well as "financial aid and scholarship programs." Complaint at p. 10. However, the complaint is devoid of any allegation purporting to link this financial support to the particular actions of which plaintiff complains. A mere allegation of some funding, without assertions of pervasive regulation at all levels, cf. Holodnak v. Avco Corp., 514 F.2d 285 (2d Cir. 1975), and without even a suggestion of how the funding may have caused or contributed to the alleged deprivation, see Powe v. Miles, supra, is insufficient to plead the requisite State action. See Wahba v. New York University, supra, 492 F.2d at 98-100; Kaplan v. Long Island University, 85 CCH Lab.Cas. ¶ 10,942 at p. 19,650 (S.D. N.Y.1978) (State financial aid to LIU for dormitory construction and general education purposes insufficient to establish State action); Miller v. Long Island University, 85 Misc.2d 393, 380 N.Y.S.2d 917 (Sup.Ct. Kings County 1976) (LIU not State actor, under federal case law, with regard to claim of denial of procedural due process).
Plaintiff points out that NYSED approves programs and degree requirements at LIU and ultimately licenses as teachers the successful graduates of those programs. Plaintiff concedes, however, that such regulation is common in New York and not peculiar to or particularly pervasive at LIU. Complaint at p. 20. It has been clearly stated that the exercise of general regulatory powers over the standards of education does not implicate the State in particular decisions or actions taken by an otherwise independent university. Grafton v. Brooklyn Law School, supra, 478 F.2d at 1141-42; Powe v. Miles, supra, 407 F.2d at 81-83; Miller v. Long Island University, supra.
Plaintiff asserts, nonetheless, that his allegation of NYSED's particular involvement in the approval of the graduate degree programs avers a sufficient "nexus" to make his dismissal State action. The complaint, however, contains no allegation whatsoever of the State's involvement in the bringing of charges against plaintiff or *250 the hearing that resulted in his dismissal. In the absence of such an allegation, even assuming plaintiff could substantiate his averment of NYSED cooperation in the development and institution of the degree programs, he has failed to allege State involvement in the only events that could form the basis upon which this Court could grant relief, that is, the dismissal of plaintiff without due process. See Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).
Even a liberal reading of the complaint would not permit the Court to infer a charge that NYSED somehow insinuated itself into the particular campus issue of the charges against plaintiff and influenced or coerced LIU to dismiss him. See Graseck v. Mauceri, 582 F.2d 203, 209 (2d Cir. 1978). Nor can it be said that the complaint avers that NYSED in any way "put its weight on the side of the" complained of procedures or placed its "imprimatur" on plaintiff's dismissal.[4]Jackson v. Metropolitan Edison Co., supra, 419 U.S. at 357, 95 S.Ct. at 456-57. Cf. Coleman v. Wagner College, 429 F.2d 1120 (1970).
Plaintiff's claim that his conduct was not violative of the degree programs approved by NYSED more than two years prior to the disciplinary proceedings, rather than investing those proceedings with the quality of State action, is more properly viewed as a possible defense to the charges of unprofessional conduct that were brought against him. It is apparent from the complaint and his motion papers that the involvement of LIU with NYSED that plaintiff would have this Court review relates not to the disciplinary procedures but to the substance of the charges brought against him as they may relate to the degree programs he authored. These matters, however, turn on issues of academic and professional standards that this Court considers itself peculiarly unadapted to resolve.
Accordingly, since it appears beyond doubt that plaintiff can prove no set of facts in support of his claims that would entitle him to relief under either the Fourteenth Amendment or 42 U.S.C. § 1983, Conley v. Gibson, supra, the complaint is dismissed for failure to state a claim. Rule 12(b)(6), F.R.Civ.P.
SO ORDERED.
NOTES
[1] Plaintiff appears to have joined as parties defendant LIU, C.W. Post, and the faculty at C.W. Post. Since he makes no distinctions between these defendants, and as the legal issues discussed above are identical as to them all, these defendants will be treated collectively and termed "LIU".
[2] LIU also contends that all of plaintiff's claims are barred by the res judicata or collateral estoppel effect of a State court dismissal of an Article 78 proceeding he brought and the dismissal by an arbitrator of a grievance he pursued. However, since neither the State court nor the arbitrator reached the merits of plaintiff's federal claim, this Court is unable under the law of this Circuit to give preclusive effect to those decisions. Winters v. Lavine, 574 F.2d 46, 57 (2d Cir. 1978); Newman v. Board of Education, 508 F.2d 277 (2d Cir.), cert. denied, 420 U.S. 1004, 95 S.Ct. 1447, 43 L.Ed.2d 762 (1975); Lombard v. Board of Higher Educ., 502 F.2d 631 (2d Cir. 1974), cert. denied, 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975). But see McCurry v. Allen, 449 U.S. 90, 97 n. 10, 101 S.Ct. 411, 416 n.10, 66 L.Ed.2d 308 (1980).
[3] More precisely, the "under color of state law" prerequisite applies to actions brought under 42 U.S.C. § 1983, while the term "state action" is employed in Fourteenth Amendment cases. The two terms, however, have "consistently been treated as the same thing" and used interchangeably. United States v. Price, 383 U.S. 787, 794 n.7, 86 S.Ct. 1152, 1157 n.7, 16 L.Ed.2d 267 (1966). Graseck v. Mauceri, 582 F.2d 203, 204 n.5 (2d Cir. 1978).
[4] Indeed, although the complaint repeatedly alludes to "pressures" brought to bear upon defendants by the news media to investigate and discipline unprofessional conduct at C.W. Post, there is no allegation whatsoever that any official or agent of the State was involved in any way in these alleged calls for an inquiry.