Selene WEISE, Plaintiff,

v.

SYRACUSE UNIVERSITY, et al., Defendants.

Jo Davis MORTENSON, Plaintiff,

v.

SYRACUSE UNIVERSITY, et al., Defendants.

Nos. 73-CV-420, 73-CV-545.

United States District Court,
N.D. New York.

Dec. 8, 1982.

James I. Meyerson, New York City, for plaintiffs.

Bond, Schoeneck & King, Syracuse, N.Y., for defendants; Paul Sansoucy, Syracuse, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

This case is presently before the Court on defendant's motion for summary judgment, and defendant's alternative motion to dismiss. Originally filed as two separate actions against Syracuse University, much of this case has proceeded in a consolidated manner, and although this Court will treat individual factual differences separately, for all practical purposes the two cases must be consolidated pursuant to Fed.R. Civ.P. 42(a).

Plaintiffs' claims have received thorough attention from both the district court and Second Circuit. The Court of Appeals decision is incorporated by reference to save repetition of the factual and procedural history. *Weise v. Syracuse University*, 522 F.2d 397 (2nd Cir.1975).

### I.

#### Class Action

Although the Second Circuit remanded the issue of class action certification, the parties have pre-empted district court review by signed stipulation to proceed without class action status. (Stipulation signed November 2, 1979).

Briefly, this Court must now address plaintiffs' 42 U.S.C. §§ 1983, 1985(3) claims, as well as the Title VII claim.

#### The Section 1983 Claim

The § 1983 claim must be addressed before treating the remaining claims. Since the 1975 decision in *Weise*, the Second Circuit has been particularly sensitive to the *ad hoc* review necessary in finding the requisite state action to sustain this civil rights claim.

This recognition does not diminish the need for consistency in the application of some general analysis in describing the presence of state action. The 1975 *Weise* case demonstrated two general theories, and summarily discarded one. Noting a prior discussion in *Grafton v. Brooklyn Law School,* 478 F.2d 1137, 1140 and n. 6 (2nd Cir.1973); *Powe v. Miles,* 407 F.2d 73, 80 (2nd Cir.1968), a footnote in *Weise* rejected the possibility that education serves a public function. *Weise, supra,* at 404, n. 6. This position has been more recently supported in *Gray v. Project More, Inc.,* 469 F.Supp. 621, 629 (D.Conn.1979); *Huff v. Notre Dame High School of W. Haven,* 456 F.Supp. 1145, 1149–50 (D.Conn.1978); *Stewart v. New York University,* 430 F.Supp. 1305, 1312 (S.D.N.Y.1976).

The remaining analysis relies upon a finding of a symbiotic relationship between the state and the private institution. *Jensen v. Farrell Lines, Inc.,* 625 F.2d 379, 384–85 (2nd Cir.1980), *cert. denied,* 450 U.S. 916, 101 S.Ct. 1359, 67 L.Ed.2d 341 (1981), *citing, Burton v. Wilmington Parking Authority,* 365 U.S. 715, 716, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961); *Grossner v. Trustees of Columbia University,* 287 F.Supp. 535, 548 (S.D.N.Y.1968) (symbiotic relationship coupled with the public function analysis).

Of course this analysis is by nature hopelessly intertwined with factors that involve a finding of a public function. Despite the more recent division into public function and symbiotic relationship. *Jensen, supra,* at 384; *Gray v. Project More, Inc.,* 469 F.Supp. 621, 626–29 (D.Conn.1979) (state entanglement and state function approaches); *Wagner v. Sheltz,* 471 F.Supp. 903, 908–9 (D.Conn.1979) (looking to functional nexus and for public function); *Huff v. Notre Dame High School of West Haven,* 456 F.Supp. 1145 (D.Conn.1978) (recognizing three approaches: state entanglement, state function and state likeness), some district courts in this Circuit have adhered to an earlier five part factoring scheme articulated in *Jackson v. Statler Foundation,* 496 F.2d 623, 629 (2d Cir.1974). Those factors to be weighed are:

1) the degree to which the 'private' organization is dependent on governmental aid; 2) the extent and intrusiveness of the governmental regulatory scheme; 3) whether that scheme connotes governmental approval of the activity or whether the assistance is merely provided to all without such connotation; 4) the extent to which the organization serves as a public function or acts as a surrogate for the State; and 5) whether the organization has legitimate claims to recognition as a 'private' organization in associational or other constitutional terms.

Continued use of this interdependent analysis illustrates the need for a subjective factual balancing of all possible factors, rather than narrowly designing a finding based on either public function or symbiotic relationship. *Jensen, supra,* at 384.

Before discussion begins, "it is well to remember Judge Friendly's admonition that classification of the particular constitutional right at issue 'must be among the first, if not the very first,' step in making the determination whether the conduct of a private party can be attributed to the State." *Wagner v. Sheltz,* 471 F.Supp. 903, 907 (D.Conn.1979), *quoting, United States v. Solomon,* 509 F.2d 863, 871 (2d Cir.1975).

In fact, the Second Circuit's prior treatment of this *Weise* case outlined the *Jackson, supra,* five factor analysis, but along with the recognition that it be employed in only certain discriminatory situations. Generally speaking, it has not been considered appropriate in non-discriminatory cases. *Brooks v. Flagg Bros., Inc.,* 553 F.2d 764, 770 (2d Cir.1977) (noting district court's misapplication of 5 part test in a non-discrimination case). *But see, Brooks v. Flagg Brothers, Inc.,* 404 F.Supp. 1059, 1062–63 (S.D.N.Y.1975) where Judge Werker noted that the *Jackson* factors are normally used in discrimination cases, but "they are helpful in delimiting the outer boundaries of state action prerequisites." The court in *Statler Foundation* found that if the defendant institutions were substantially dependent upon their tax-exempt status, if the government's regulatory scheme was

both detailed and intrusive, if the scheme carried connotations of government approval, if the institutions did not have a substantial constitutional claim to be left alone, and if they served some public function, *then* the district court on remand could find state action. *Id.* at 1063 n. 12.

Those district court opinions employing the *Jackson* five-part analysis include the following: *Janusaitis v. Middlebury Volunteer Fire,* 464 F.Supp. 288, 297–300 (D.Conn. 1979) (found insufficient nexus); *Ludtke v. Kuhn,* 461 F.Supp. 86, 95 (S.D.N.Y.1978) (found symbiotic relationship); *Stewart v. New York University,* 430 F.Supp. 1305, 1311–12 (S.D.N.Y.1976) (insufficient cumulative effect); and *Gilinsky v. Columbia University,* 488 F.Supp. 1309, 1311 (S.D. N.Y.1980), *aff'd without opinion,* 652 F.2d 53 (2d Cir.1981). This Circuit has been consistent in applying differing standards of review in state action inquiries, depending upon the nature of the right involved. *Taylor v. Consolidated Edison Co. of New York, Inc.,* 552 F.2d 39, 42 (2d Cir.1977); *Brooks v. Flagg Bros.,* 553 F.2d 764, 770 (2d Cir.1977); *Jackson v. Statler Foundation,* 496 F.2d 623, 629 (2d Cir.1974); *Weise v. Syracuse University,* 522 F.2d 397, 406 (2d Cir.1975); *Girard v. 94th St. & Fifth Ave. Corp.,* 396 F.Supp. 450, 454 (S.D. N.Y.1975), *aff'd,* 530 F.2d 66 (2d Cir.1976), *cert. denied,* 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976); *Madon v. Long Island University, etc.,* 518 F.Supp. 246, 249 (E.D. N.Y.1981); *Ludtke v. Kuhn, supra* at 96.

However, it appears that the *Jackson, supra,* five-factor analysis should be employed where the claim warrants a more strict standard, and hence the closer scrutiny. *Girard, supra,* at 454.

It remains unclear following *Weise* whether sexual discrimination warrants exactly the same scrutiny accorded racial claims. *Graseck v. Mauceri,* 582 F.2d 203, 208 n. 17 (2d Cir.1978); *Ridgefield Women's Political Caucus, Inc. v. Fossi,* 458 F.Supp. 117, 121 n. 4 (D.Conn.1978); *cf. Girard v. 94th Street & Fifth Ave. Corp.,* 396 F.Supp. 450, 454 (S.D.N.Y.1975) (agreeing with *Barrett v. United Hospital,* 376 F.Supp. 791, 797 n. 26 (S.D.N.Y.1974), that "the rationale behind the exception for racial discrimination may make it equally applicable to cases involving sex or age discrimination.") *But see, Taylor v. Consolidated Edison Co. of New York, Inc.,* 552 F.2d 39, 43 (2d Cir.1977) ("we have found that a challenge to the allocation of a state's tax revenues on sex discrimination grounds may be subject to a higher state action burden."); *Janusaitis v. Middlebury Volunteer Fire,* 464 F.Supp. 288, 296 (D.Conn.1979) (holding greater showing of state involvement for state action in all cases but for race and sex discrimination); *Stewart v. New York University,* 430 F.Supp. 1305, 1311 n. 6 (S.D.N.Y.1976) (expanding the racial discrimination category to include "other invidious class-based discrimination"); *Korzenik v. Marrow,* 401 F.Supp. 77, 81 (S.D.N.Y.1975) (holding that "since classifications based upon sex, like classifications based upon race, are inherently suspect and must therefore be subjected to strict judicial scrutiny.") Yet clearly *Weise* differentiated between the student discipline cases, and cases involving invidious class-based discrimination, concluding that the latter such cases warranted greater leniency in a finding of state action. *Weise, supra* at 406; *see also, Madon v. Long Island University,* 518 F.Supp. 246, 249 (E.D.N.Y.1981).

However, it appears that a slightly different standard would apply as between race and sex discrimination. The Southern District has recently noted this in reviewing Supreme Court treatment of both kinds of cases, in *Spirt v. Teachers Ins. and Annuity Ass'n,* 475 F.Supp. 1298, 1312 n. 22 (S.D.N.Y.1979), concluding that perhaps "somewhat more governmental involvement would be required to find state action in sex discrimination cases then in race discrimination cases." *But see, Downs v. Sawtelle,* 574 F.2d 1, 6 n. 5 (1st Cir.1975) (urging that fundamental rights should receive identical scrutiny).

This position represents a departure from earlier § 1983 cases, for in *Powe, supra* at 80, the Second Circuit counseled that all

discriminatory policies would be treated similarly. It appears that perhaps the turbulent decade of the sixties and its aftermath spawned litigation which expanded the scope of § 1983, thereby illustrating the need for some differentiation in the treatment of state action. This might explain the position recognizing varying sensitivity to state intrusion adopted in *Weise,* and followed since that time in this Circuit. *See also, Taylor v. Consolidated Edison Co. of New York, Inc.,* 552 F.2d 39, 42–3 (2d Cir.1977).

It remains, however, that the *Jackson* five-factor analysis shall be followed in this instance, treating all factors cumulatively rather than separately.

The overriding necessity of a nexus between the state's intrusion, and the challenged activity. *Powe v. Miles, supra* at 83; *Winsey v. Pace College,* 394 F.Supp. 1324 (S.D.N.Y.1975) has set the tone for findings of state action.

This position must be tempered by the peculiar nature of the facts, and by the notion that "[T]he Equal Protection Clause would be a sterile promise if state involvement in possible private activity could be shielded altogether from constitutional scrutiny simply because its ultimate end was not discrimination, but some higher goal." *Norwood v. Harrison,* 413 U.S. 455, 466–7, 93 S.Ct. 2804, 2811, 37 L.Ed.2d 723 (1972).

Despite a tendency in the district courts to find a public function independently adequate, *Ruffler v. Phelps Memorial Hospital,* 453 F.Supp. 1062, 1070 (S.D.N.Y.1978); *Schlein v. Milford Hospital,* 423 F.Supp. 541, 542 (D.C.Conn.1976), the Second Circuit has maintained that the "state action, not the private action, must be the subject of the complaint." *Schlein v. Milford Hospital,* 561 F.2d 427, 428 (2d Cir.1977), *quoting Barrett v. United Hospital,* 376 F.Supp. 791, 803 (S.D.N.Y.), *aff'd mem.,* 506 F.2d 1395 (2d Cir.1974), *quoting Mulvihill v. Butterfield Memorial Hospital,* 329 F.Supp. 1020 (S.D.N.Y.1971).

This does not rule out the possibility that the public function could be so pervasive as to influence every aspect of the private institution, thereby rendering *any* act by that institution, "under color of state law." This was true in the case of a child-rearing institution, *Perez v. Sugarman,* 499 F.2d 761, 765 (2d Cir.1974), and in a partly private, partly public hospital, *McCabe v. Nassau County Medical Center,* 453 F.2d 698, 703 (2d Cir.1971), and student organization of a public college, *Sellman v. Baruch College of City University of New York,* 482 F.Supp. 475, 478–9 (S.D.N.Y.1979).

The crux of the matter is just what kind, and what degree, of state intrusion must be manifest before sufficient state action can be found. To complicate matters, inaction or neutrality on the part of the state may constitute sufficient state action, *Lefcourt v. Legal Aid Society,* 445 F.2d 1150, 1155 n. 6 (2d Cir.1971); *Schein, supra,* 561 F.2d at 428, n. 5, but so far only where sexual or racial discrimination is at issue. *Ludtke v. Kuhn,* 461 F.Supp. 86, 96 (S.D.N.Y.1978) (sex discrimination). "The Supreme Court, however, 'has never held that a State's mere acquiescence in a private action converts that action into that of the State.'" *Wagner v. Sheltz,* 471 F.Supp. 903, 908 (D.Conn.1979), *quoting, Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 164, 98 S.Ct. 1729, 1737–1738, 56 L.Ed.2d 185 (1978).

A brief review of the cases addressing this issue in the wake of *Weise* adds some definition to the present analysis.

Clearly tax exempt status alone will not suffice. *Stewart v. New York University,* 430 F.Supp. 1305, 1309–10 (S.D.N.Y. 1976). Financial contribution without more will not suffice. *Gilinsky v. Columbia University,* 488 F.Supp. 1309, 1312 (S.D.N.Y. 1980); *Grossner v. Trustees of Columbia University in City of N.Y.,* 287 F.Supp. 535, 548 (S.D.N.Y.1968); *Lorentzen v. Boston College,* 440 F.Supp. 464, *aff'd,* 577 F.2d 720 (1st Cir.1978), *cert. denied,* 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478, *reh. denied,* 441 U.S. 917, 99 S.Ct. 2021, 60 L.Ed.2d 391 (1979) (1% of budget is insufficient public contribution).

Similarly, financial assistance to a private university does not constitute state action. *Madon v. Long Island University, etc.,* 518 F.Supp. 246, 249 (E.D.N.Y.1981); *Huff v. Notre Dame High School of W. Haven,* 456 F.Supp. 1145, 1148 (D.Conn.1978); *Sarkees v. Wright & Kremers, Inc.,* 433 F.Supp. 705, 707 (W.D.N.Y.1977).

Government regulation alone will not mandate a finding of state action. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 350–51, 95 S.Ct. 449, 453–454, 42 L.Ed.2d 477 (1974); *Pavolini v. Bard-Air Corp.,* 645 F.2d 144, 147 (2d Cir.1981); *Taylor v. Consolidated Edison Co. of New York,* 552 F.2d 39, 42 (2d Cir.1977); *Kops v. New York Tel. Co.,* 456 F.Supp. 1090, 1094 (S.D.N.Y. 1978), *aff'd without opinion,* 603 F.2d 213 (2d Cir.1979).

Furthermore, the presence of both financial involvement and regulation by government will not necessarily trigger state action. *Jensen v. Farrell Lines, Inc.,* 625 F.2d 379, 387 (2d Cir.1980), *citing, Weise v. Syracuse University,* 522 F.2d 397, 405 (2d Cir.1975).

The accumulation of connections between governmental and private interests must focus on the direct or specific involvement required in *Powe v. Miles,* 407 F.2d 73 (2d Cir.1968), and reiterated again as a requirement in *Graseck v. Mauceri,* 582 F.2d 203 (2d Cir.1978). The court renewed the directive that it is the "degree of influence and control over the private entity, and in particular over the decision itself that is determinative." *Id.* at 211.

■■■ The Second Circuit has reversed the decision of a district court allowing a finding of state action based upon some general notion of governmental influence in the communications industry. *Kuczo v. Western Connecticut Broadcasting Co.,* 424 F.Supp. 1325 (D.Conn.1976), *rev.* 566 F.2d 384 (2d Cir.1977). It is clear that a functional nexus unsubstantiated by direct involvement will not sustain a finding of governmental intrusion, even where First Amendment considerations are at stake. Clearly a specific nexus must be present between state influences in campus life, and

the actions providing the basis for suit under § 1983. *Madon v. Long Island University, etc.,* 518 F.Supp. 246, 250 (E.D.N.Y. 1981).

A word of caution in adopting this as a hard and fast rule, for the Second Circuit has not tempered the position taken in *Holodnak v. Avco Corp., Avco-Lycoming Div., Stratford,* 514 F.2d 285, 289–90 (2d Cir.), *cert. denied,* 423 U.S. 892, 96 S.Ct. 188, 46 L.Ed.2d 123 (1975), which found sufficient state action on the general insinuation of governmental influence into the manufacturing operations of a corporate facility. No evidence of direct involvement was exposed in that opinion. In fact, the Second Circuit referred to the possibility that Syracuse University might have similar general symbiotic relationship with government to the one triggering state action in *Holodnak. Weise, supra,* 522 F.2d at 407, n. 12.

## II.

This review of the Second Circuit's position on state action has not revealed any more definite position than the analysis supplied in the 1975 *Weise* opinion. The inconsistencies are best explained by a tacit hesitancy to transform the status of private entities by viewing them as representatives of the state. Judge Blumenfeld noted this hesitancy in *Cornelius v. Benevolent Protective Order of Elks,* 382 F.Supp. 1182 (D.Conn.1974), but went on to describe that

[O]ur society has always placed a high value on privacy and private enterprise, but the increasing involvement of the state in all aspects of life and culture is a concomitant of the modern industrial state. This pervasive involvement threatens traditional values of decentralization, self-reliance, private endeavor, and personal association.

*Id.* at 1190 n. 8.

It appears reasonable that when a so-called private operation abandons or outgrows a character which promotes such individualistic goals, and actively and positively courts the approval and support of the government, then the courts should be

less inclined to safeguard a privacy interest that has already been compromised by that "private" enterprise.

Although courts in this Circuit have had occasion to address the public/private nature of a large university, *Wahba v. New York University*, 492 F.2d 96 (2d Cir.1974); *Madon v. Long Island University, etc.*, 518 F.Supp. 246 (E.D.N.Y.1981); *Gilinsky v. Columbia University*, 488 F.Supp. 1309 (S.D.N.Y.1980), *aff'd without opinion*, 652 F.2d 53 (2d Cir.1981); *Sellman v. Baruch College of City University of New York*, 482 F.Supp. 475 (S.D.N.Y.1979); *Stewart v. New York University*, 430 F.Supp. 1305 (S.D.N.Y.1976); *Grossner v. Trustees of Columbia University in City of N.Y.*, 287 F.Supp. 535 (S.D.N.Y.1968), none compare with the present thorough factual analysis focused on claims of class-based invidious discrimination.

Before looking to any of the evidence, it must be emphasized that this Court will follow the general directives revealed in the 1975 Circuit Court treatment of this case, and apply the *Jackson* factoring analysis, as this case involves claims of class-based discrimination. Be it race or sex, the courts should demonstrate particular care when examining the plight of any individual claiming harm of constitutional proportion that has been inflicted upon them by mere virtue of their membership in a class suffering discriminatory treatment.

Therefore, this Court may not rely upon those cases involving universities that did not focus upon class-based invidious discrimination. *Wahba, supra; Madon, supra; Sellman, supra; Grossner, supra.*

However, none of the remaining university cases, expose nearly the same broad spectrum of evidence to support every single aspect of the *Jackson* analysis that is present in this case. The *Gilinsky* opinion admits that "[T]he only factor arguably present here is the first, the receipt of financial assistance." *Id.* at 1312. Furthermore, that opinion described that a showing of direct influence by the government funding must precede any weight given financial statistics. *Id.*

The court in *Stewart, supra,* reviewed all of the *Jackson* factors, but found no evidence to support either the public function analysis, or the state approval theory, or the government regulation of the specific activity. Furthermore, the plaintiffs in *Stewart* were unable to show that government funding was related to the challenged activity.

To supply sufficient information to make a finding of fact on state action, the Second Circuit remanded this case for a hearing on state action, but the parties have supplied the court with documentary evidence addressing the court's state action concerns.

The parties have stipulated that some of the exhibits be admitted into evidence, yet the remaining documents await evidentiary rulings by this Court.

■ Of course, "exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence," are properly before the Court. J. Moore, Moore's Federal Practice ¶ 56.11[1.–8] (2nd ed. 1976). However, in view of this Court's deference to the Supreme Court's position on state action, this Court finds it unnecessary to look beyond the exhibits already in evidence by stipulation, and consequently reserves decision on the admissibility of the remaining documents.

The information contained in the exhibits uncovers detailed and extensive information regarding Syracuse University's financial, academic and employment directives. Before addressing it in detail, this Court must respond to the Supreme Court's recent decision in *Rendell-Baker v. Kohn,* —— U.S. ——, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). The plaintiff in that case brought a § 1983 discrimination claim unaccompanied by a Title VII claim. The Court applied a general analysis which questioned 1) whether a symbiotic relationship existed between the school and the State, 2) whether the School filled a public function, 3) whether the State regulated the school's function and 4) whether the State funded the school.

This Court is disturbed to note that on a set of facts far more suggestive of state control, the Supreme Court was able to find

that the defendant's actions were purely private. Furthermore, no collective effect was observed, for each of the factors reviewed was treated independently. Justices Marshall and Brennan did apply a cumulative effect in a persuasive dissent. They observed that:

[W]hen an entity is not only heavily regulated and funded by the State, but also provides a service that the State is required to provide, there is a very close nexus with the State. Under these circumstances, it is entirely appropriate to treat the entity as an arm of the State.

*Id.* at ——, 102 S.Ct. at 2776. The dissent concluded that the majority's refusal to find state action "marks a return to empty formalism in state action doctrine." *Id.*

■ Considering the sparsity of analysis given the facts in *Rendell-Baker,* and the Court's choice not to shed any light on the degree of state intrusion necessary to trigger state action in varying types of claims, i.e., sexual as opposed to racial, this Court may only surmise that it is impossible for plaintiffs Weise and Mortenson to establish state action under any view of the instant facts. Although Syracuse University derives significant financial support from New York State, the university does not even approach the level of integral state and private institution cooperation represented in *Rendell-Baker.*

It is with some disappointment that this Court abandons the careful lessons of the Second Circuit courts to adopt the example represented by the *Rendell-Baker* decision.

In view of this precedent, this Court is bound to find that state action does not exist, and plaintiffs' § 1983 claims must be dismissed.

### The § 1985(3) Claim

■ Although a claim under 42 U.S.C. § 1985(3) may be sustained without state action, *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the plaintiffs herein have premised the § 1985(3) claims upon the fourteenth amendment, which then require a finding of state action. *Great American Federal*

*Savings & Loan v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). The Supreme Court in *Novotny* further described that "the deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." *Id.* at 2352. *See also, Weiss v. Willow Tree Civic Assoc.,* 467 F.Supp. 803 (S.D.N.Y.1979); *Spirt v. Teacher's Insurance and Annuity Assoc.,* 475 F.Supp. 1298 (S.D.N.Y.1979).

For this reason, plaintiffs' § 1985(3) claims must also be dismissed, with leave to renew if substantive rights can be articulated which do not necessitate a finding of state action.

### Title VII

Plaintiffs' Title VII employment discrimination claims were briefly treated by the Second Circuit in *Weise v. Syracuse University,* 522 F.2d 397, 409–413 (2d Cir.1975). That opinion established that plaintiff Weise has a Title VII claim for the university's alleged discriminatory refusal to hire her for a teaching assistantship in early 1973, and further recognized that plaintiff Mortenson has a Title VII claim for the alleged discriminatory refusal to reconsider her termination following the Faculty Senate's Hearing Panel findings of January 1973. Despite plaintiffs' claims, the Second Circuit found as a matter of law, that neither of those claims may be applied retroactively. *Id.* at 411. Moreover, Second Circuit appellate review found that both plaintiff Weise and plaintiff Mortenson had properly preserved their claims via administrative proceedings.

■ Although the recent Supreme Court decision of *Kremer v. Chemical Construction Corp.,* —— U.S. ——, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1981), unequivocally forecloses a Title VII claimant's attempt to obtain federal court review of a state court judgment "upholding a state administrative agency's rejection of an employment discrimination claim as meritless, when the state court's decision would be res judicata in the state's own courts." *Id.* at ——, 102 S.Ct. at 1888, that decision does not foreclose all Title VII claims herein.

Here, plaintiff Weise never pursued her claim in the state court, therefore her federal Title VII claim is not pre-empted. However, plaintiff Mortenson's claims demonstrate a slightly more complicated posture. Dr. Mortenson's original grievance involved tenure denial, resulting in not only university proceedings, but ultimately in state appellate affirmation of the Division of Human Rights Appeal Board's decision that sex was not a factor in tenure denial. *Mortenson v. Syracuse University,* 46 A.D.2d 1002, 362 N.Y.S.2d 104 (1974). The scope of that court's "review is no greater than that of the Appeals Board." *Id., citing,* (Human Rights Law, section 298; *cf. Matter of Mize v. State Division of Human Rights,* 33 N.Y.2d 53, 57, 349 N.Y.S.2d 364, 367, 304 N.E.2d 231, 233). Therefore, "the sole question" before the Appellate Division was "whether there was sufficient evidence in the record to support the Commissioner's finding that no discrimination occurred in *denying petitioner tenure.*" (emphasis added). Dr. Mortenson's further claim of discriminatory tenure reconsideration was not treated by the Appellate Division, and therefore properly remains before this Court. *See e.g., Sinicropi v. Nassau County,* 634 F.2d 45, 46 (2d Cir.1980).

### Statute of Limitations

■ As the Second Circuit noted in *Weise,* before 1972 "Syracuse University was free, as far as Title VII was concerned, to discriminate in its employment practices." *Weise, supra* at 410. Ms. Weise filed her complaint in October of 1973. Certainly her Title VII claim is alive from 1972 forward. Similarly, plaintiff Mortenson's complaint was filed in December of 1973. Mortenson's claims relating to tenure reconsideration are not time barred.

Defendant's remaining arguments regarding the applicable statute of limitations need not be addressed in light of this Court's position with respect to § 1983. CPLR § 214(2).

### Summary Judgment

A wealth of information has been submitted as evidence in this case. As previously mentioned, much of that information is not yet in evidence. However, the exhibits already in evidence reveal alleged motivation with respect to the employment status of both plaintiffs. "In light of the court's obligation to draw all reasonable inferences against the moving party, summary judgment is rarely appropriate where the moving party's state of mind is a material issue." *Equal Employment Opportunity Com'n v. Home Ins. Co.,* 672 F.2d 252, 257 (2d Cir.1982). In drawing all reasonable inferences against the movant, this Court finds that disputed material facts prevent granting defendant's motion.

■ The dispute preventing adjudication at this procedural stage centers upon the nature of Title VII claims. Once the plaintiff has established a prima facie case, the burden shifts to defendant for rebuttal. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Lieberman v. Gant,* 630 F.2d 60, 65 (2d Cir.1980). Not only have plaintiffs Weise and Mortenson made the requisite showing under *McDonnell,* but the defendant has presented a view of the facts intended to rebut those allegations. In light of this controversy, the parties are entitled to proceed to a trial on the merits.

### Summary

For the reasons stated, plaintiffs' § 1983 and § 1985(3) claims are dismissed.

Furthermore, plaintiff Mortenson's Title VII claims focusing on her original tenure denial are dismissed.

Finally, defendant's motion for summary judgment is denied, and with the exception of the above mentioned portions of plaintiffs' claims, defendant's motion to dismiss is in all other respects denied.

The plaintiffs are instructed to file an amended complaint reflecting the directives of this Court, within 30 days of the date of this Order.

It Is So Ordered.