Christopher R. KNAUTH, Plaintiff,

v.

**NORTH COUNTRY LEGAL SERVICES, Jerry C. Leek, Marilyn L. Ray, and Alice Gregory, Defendants.**

No. 81 CV 512.

United States District Court, N.D. New York.

Oct. 17, 1983.

Christopher R. Knauth, pro se.

Feit & Schlenker, Albany, N.Y., for defendants; Dennis B. Schlenker, Albany, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

During a period of internal strife at North Country Legal Services, Inc., the plaintiff Christopher Knauth received a letter terminating his employment as a Senior Attorney. He had been with NCLS just under six months at the time and, under the terms of the NCLS Personnel Manual, was considered a probationary employee. Having moved his large family some 200 miles to AuSable Forks, New York in reliance on employment with NCLS, Knauth was exposed to great hardship by the termination.

In April of 1981, Knauth commenced an Article 78 proceeding in New York State Supreme Court, Essex County. The lengthy petition contains nine causes of action. The first three assert that Knauth was deprived of property without due process and denied equal protection of the law; the fourth is a claim, under Title VII, that Knauth was discriminated against "on the grounds of his age and experience in the legal profession," *Petition* ¶ 122(d); the fifth is a breach of contract claim; the sixth is a claim that defendant Gregory intentionally interfered with Knauth's contract by deliberately slandering and libelling his character; the last three causes of action seek damages on grounds that various defendants' acts were "unacceptable", "uncivilized", "improper", or "illegal". *Petition* ¶¶ 125–27.

Knauth also included in his petition certain allegations of "state action", in support of his claim that the defendants were subject to constitutional restraints. Knauth states that NCLS "is a grantee supported entirely by federal monies which emanate from the Legal Services Corporation, which in turn is funded by the U.S. Congress to fund local legal services corpo-

rations...." *Petition* ¶ 110. He further alleges that NCLS is subject to regulations promulgated by the Legal Services Corp. *Petition* ¶ 112.

The defendants initially accepted this theory, at least for purposes of removal. Contending that they were persons acting under an officer of the United States, i.e., the Legal Services Corporation, defendants removed the action to this court pursuant to 28 U.S.C. § 1442(a)(1).

Over the next two years discovery was conducted but there was little other activity in the case. In June of 1983, defendants moved to dismiss the action pursuant to Rules 12(b)(1) and (6), Fed.R.Civ.P., or alternatively for summary judgment pursuant to Rule 56(b), Fed.R.Civ.P. In support of their motion, defendants now argue, contrary to their previous stance, that their acts are not under color of federal law, despite their relationship with the Legal Services Corporation. In addition, the defendants contend that Knauth possessed neither a liberty nor a property interest in continued employment; that Knauth did not meet the jurisdictional preconditions for asserting a claim under Title VII; that under New York law Knauth's employment was terminable at will.

For the reasons discussed herein, the court finds that it lacks subject matter jurisdiction over this lawsuit, and therefore remands the case to state court pursuant to 28 U.S.C. § 1447(c).

The Legal Services Corporation is a nonprofit corporation formed pursuant to the Legal Services Corporation Act of 1974, 42 U.S.C. § 2996 *et seq.*, to provide legal services to those denied equal access to the judicial system because of inadequate income. *Gerena v. Puerto Rico Legal Services, Inc.*, 538 F.Supp. 754, 763 n. 2 (D.P.R. 1982).

The defendant NCLS is a not-for-profit corporation organized for the purpose of providing free legal services in civil cases to individuals and organizations in the counties of Essex, Hamilton, Franklin, Clinton and St. Lawrence. NCLS is mainly funded by federal monies made available through Legal Services Corporation grants to qualified legal aid organizations. In order to receive such funding, NCLS must adhere to certain federal regulations to insure that the funds will not be diverted to unauthorized purposes.

Presumably, Knauth's due process and equal protection claims are based upon the fifth, rather than the fourteenth amendment since the allegations are of federal, as opposed to state, involvement in NCLS The fifth amendment restricts only the government, and not private persons. *Public Utilities Comm'n v. Pollak*, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068 (1952). Thus, it is applicable to the conduct of NCLS only if there is sufficient federal control, regulation, and interference with NCLS to warrant characterizing that conduct "federal action." *Lefcourt v. Legal Aid Society*, 445 F.2d 1150, 1155 (2d Cir. 1971).[1]

Federal funding alone does not transform private conduct into federal action; nor do government regulations, imposed as a condition attached to funding, mandate a finding of federal action. *United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976) (the torts of community action agencies are not federal torts due to funding by the Office of Economic Opportunity and federal regulations); *Lefcourt v. Legal Aid Society, supra*, 445 F.2d 1150 (the dismissal of an attorney by the Legal Aid Society is not state action despite financial benefits from, and contractual obligations owed to New York City); *Weise v. Syracuse University*, 553 F.Supp. 675 (N.D.N.Y.1982) (alleged employment discrimination by private university is not state action despite financial

**1.** *Lefcourt* actually involves a determination of whether there is "state action" for fourteenth amendment purposes, as do several of the cases cited in this opinion. However, the standards utilized to find federal action for the fifth amendment are identical to those used to find state action for the fourteenth amendment. *Warren v. Government National Mortgage Ass'n*, 611 F.2d 1229, 1232 (8th Cir.1980).

assistance and regulation by government). Moreover, to support a finding of federal action, the plaintiff must generally show not only a significant federal intrusion, but a nexus between the governmental intrusion and the challenged activity. *See Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974); *Powe v. Miles,* 407 F.2d 73, 83 (2d Cir.1968); *Weise v. Syracuse University, supra,* 553 F.Supp. at 679.

In *Gerena v. Puerto Rico Legal Services,* 538 F.Supp. 754 (D.P.R.1982), the district court carefully considered the precise question posed here: whether the dismissal of an attorney by a legal services nonprofit corporation constitutes federal action by virtue of federal funding through the Legal Services Corporation, and by virtue of federal regulations. After examining the Legal Services Corporation Act, the court concluded as follows:

> [T]he LSC's regulation does not impair the independence of PRLS to such a degree as to transform the conduct of the latter into conduct of the federal government. Although the LSC is the primary funding source of PRLS, it "does not have the power to supervise the everyday activities of the recipients of its monetary grants." ... PRLS is not an agent of the LSC ... PLRS must, of course, meet certain restrictions and limitations if it wishes to receive federal funding.... Plaintiff has cited some of those restrictions. They are, however, relatively insignificant and do not intrude upon the everyday activities and decisions of PRLS. The restrictions are designed only to ensure that the ultimate goals sought by Congress through the creation of LSC are achieved. The broad independence of PRLS is preserved under the general statutory framework.

*Id.* at 763. (citations omitted). The court accordingly dismissed the constitutional claims against PRLS for want of jurisdiction. *Id.* at 765.

■ This court has also examined the pertinent legislation, and arrives at the same conclusion. Although it is conceivable that other conduct by NCLS could be deemed federal action for purposes of a constitutional claim, see *Gurda Farms, Inc. v. Monroe County Legal Assistance Corp.,* 358 F.Supp. 841 (S.D.N.Y.1973); see also *Weise v. Syracuse University, supra,* 553 F.Supp. at 677–78 (suggesting that state action may be more readily detected where the claim is one of racial discrimination), the court sees no merit in plaintiff's contention that the employment related-decisions of NCLS which are not racially discriminatory are to be deemed acts of the federal government, and that NCLS must therefore adhere to the due process standards of the fifth amendment. The court thus finds, as the district court in *Gerena, supra,* found, that it lacks subject matter jurisdiction over plaintiff's claims under the fifth amendment.

■ Plaintiff's fourth cause of action, alleging employment discrimination in violation of Title VII, requires only brief discussion. The claim may not be entertained by this court because it has not been presented to either the New York State Division of Human Rights or the Equal Employment Opportunity Commission, as required by statute. 42 U.S.C. § 2000e–5. The Supreme Court recently held that the 180 day filing requirement is not a jurisdictional prerequisite to bringing a Title VII suit in federal court, but is rather a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). In this instance, however, the court is not faced with a plaintiff who filed late, but a plaintiff who has not alleged presenting his claim to the administrative agencies at all. Under the circumstances, the Title VII claim is so implausible, foreclosed and devoid of merit as to fall outside the ambit of federal court jurisdiction under 42 U.S.C. § 2000e–5(f)(3).[2]

---

**2.** Even if plaintiff's claim had been brought under the Age Discrimination in Employment Act,

29 U.S.C. § 621 *et seq.,* which would have been more appropriate given the allegations, the

■ The remaining causes of action involve claims that arise, if at all, under the common law of New York. The court finds that it has no independent ground of jurisdiction over such claims.

The jurisdiction of this court is dependent upon the presence of either a defendant acting under an office of the United States, 28 U.S.C. § 1442(a)(1), a federal question, 28 U.S.C. § 1331, or a plausible Title VII claim, 42 U.S.C. § 2000e–5(f)(3). Each of these jurisdictional bases has proven unavailable. 28 U.S.C. § 1447(c) provides that:

> If at any time before the final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs.

This case was removed improvidently and without jurisdiction. The court therefore remands the entire case, as it must, to the New York State Supreme Court, Essex County. Each side is to bear its own costs, and the defendants need no longer furnish a bond.

SO ORDERED.

claim would be foreclosed due to the same defect as is the Title VII claim: failure to present the claim to the applicable agency prior to bringing an action in federal court. 29 U.S.C. § 626(d).